# 14-16000

## 3:13-cv-03731-JST

IN THE

*United States Court of Appeals*

**FOR THE NINTH CIRCUIT**

————♦-♦-♦————

JANE L. CREASON,

*Plaintiff-Appellant.*

—against—

PUNEET KAUR SINGH, THEODORE KIMBALL,
and KIMBALL, TIREY & ST. JOHN LLP,

*Defendants-Appellees.*

_____

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

**REPLY BRIEF AND ADDENDUM
FOR PLAINTIFF-APPELLANT**

JANE L. CREASON
225 West Winton Avenue, Suite 106
Hayward, California  94544
(510) 783-7373

*In Propria Persona Plaintiff-Appellant*

# TABLE OF CONTENTS

ARGUMENT ...........................................................................................................1

I.   SINGH, KIMBALL AND KTS' MISREPRESENTATION OF THE FACTS
DO NOT CHANGE THE FAC; CREASON HAS STATED A CLAIM FOR
RETALIATION UNDER § 3617. ........................................................................1

  A.  The Key FAC Allegations and Evidence…………..……………………...1

  B.  Appellees Changed the FAC Timeline to Fabricate Allegations Not in the
  FAC.......................................................................................................................2

  C.  Singh, Kimball and KTS Misrepresented That Creason Disobeyed Her
  Superiors……………………………………………………………………………3

  D.  Appellees Second Major False Representation is That The Client Wanted a
  Trial So Creason Violated Her Ethical and Professional Duties. .......................4

  E.  Appellees Malign Their Own Master Stipulation and Client Tamara to
  Distract From the Stipulation That Evidences Creason's Protected Activity....10

II.  CREASON DOES NOT HAVE TO PROVE HER PRIMA FACIE CASE
OR VICTIM'S DISCRIMINATION THEORY TO ESTABLISH HER CASE
FOR RETALIATION PURSUANT TO § 3617. ..................................................7

  A.  Section 3617 of the FHA Requires Creason to Allege Any Other Person
  was Exercising a Right Protected by the FHA, Not Prosecute the Underlying
  Right.....................................................................................................................7

  B.  Victim was a Tenant in Occupation and Due Process Required Her Name
  to Appear on the Unlawful Detainer Complaint…… ............................ ……...7

  C.  Rule 12(b)(6) Does Not Require Creason to State a Prima Facie Case for
  Retaliation……………………... …………………………………..……..……...9

i

III.    PURSUING A DISCRIMINATORY EVICTION IS UNLAWFUL, AKIN TO MALICIOUS PROSECUTION, AND EXPOSES A LANDLORD TO A FAIR HOUSING VIOLATION. ...........................................................13

  A.  An Eviction that Discriminates in Violation of 42 U.S.C. § 3604(b) is a Discriminatory Housing Practice Akin to Malicious Prosecution. ...................13

  B.  The Continued Prosecution of a Discriminatory Eviction Would Have Exposed KTS' Client to a Potential Fair Housing Charge. ...............................11

IV.    CREASON IS NOT REQUIRED TO NOTICE A MOTION FOR SUMMARY JUDGMENT UNDER RULE 12(d)………………………………13

  A.  Federal Rule of Civil Procedure 12(d) Does Not Require Creason To Notice a Motion for Summary Judgment in Opposition to Singh, Kimball and KTS' Rule (12)(b)(6) Motion..........................................................................13

V.    CREASON HAS NOT WAIVED HER STATE LAW CLAIMS…………..14

  A.   Creason Appealed the Judgment Dismissing her FAC. ...........................14

CONCLUSION ...........................................................................................15

# TABLE OF AUTHORITIES

## *FEDERAL CASES*

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).........................................7, 10

*Green v. McDonnell Douglas Corp.,* 463 F.2d 337 (8th Cir. 1972).........................10

*Reyes v. Fairfield Properties,* 661 F.Supp.2d 249 (2nd Cir. 2009).........................10

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, (2002).......................................10

## STATE CASES

*Arrieta v. Mahon* 31 Cal.3d 381 (1982)....................................................................8, 9

## FEDERAL: STATUTES, RULES, REGULATIONS

42 U.S.C. § 3604(b) .................................................................................................10

42 U.S.C. § 3617 ............................................................................................. 1, 7, 14

24 C.F.R. §100.20 ....................................................................................................10

24 C.F.R. §100.60(b)(5)..................................................................................... 10, 11

Fair Housing Act .............................................................................................. passim

Federal Rule of Civil Procedure § 12(d)........................................................... passim

Federal Rule of Civil Procedure 12(b)(6) ............................................. 2, 10, 22, 24

## STATE: STATUTES, RULES, REGULATIONS

California Code of Civil Procedure § 1161.3 ............................................................7

California Code of Civil Procedure § 1164……………………………….…8,9

**OTHER AUTHORITY**

The Secretary, United States Department of Housing and Urban Development, v.
Southgate Apartment Company, LLP et al., Complaint for Discrimination
………………………..…………Reply Brief Addendum HUD Pages 1-9

# ARGUMENT

## I. SINGH, KIMBALL AND KTS' MISREPRESENTATION OF THE FACTS DO NOT CHANGE THE FAC; CREASON HAS STATED A CLAIM FOR RETALIATION UNDER § 3617.

### A. The Key FAC Allegations and Evidence.

On July 2, 2012, Singh told Creason to <u>proceed with the case</u> and Creason proceeded by attending the mandatory settlement conference on July 5, 2012 (FAC ¶¶s 36, 38-44; E29-30). At the settlement conference, Creason learned key trial witness Tamara would testify that Victim had a valid defense (FAC ¶¶s 39-40, E7, FER34) With <u>the approval of client Tamara</u> at the settlement conference, Creason negotiated a settlement and prepared a Stipulation and Order (FAC ¶41, E7). The Stipulation and Order did not evict Victim and protected KTS, the client and Creason from violating the FHA (FAC¶42). On August 15, 2012, Kimball told Creason <u>at the time of her termination</u> that she should have proceeded to trial whether or not she won (FAC ¶¶s 54, 56; E32).

Client Tamara signed the Stipulation and Order as Authorized Agent for Plaintiff (E78). Tamara stated on the record she was the Authorized Agent of Plaintiff, and approved the Stipulation on behalf of Plaintiff (E79).

### B. Appellees Changed the FAC Timeline to Fabricate Allegations Not in the FAC.

1

Singh, Kimball and KTS provide a "Factual History" in their brief in purported chronological order. [Answer Brief P.4] Prior to the July 5th settlement conference in their recital of facts, they state <u>Creason alleged</u> her supervisors Singh and Kimball "wanted Creason to take the eviction case to trial for a judicial determination of Tenant B's domestic violence defense." [Answer Brief, P. 5, FAC ¶¶s 36, 54, 56, E29, 32, 88] There is no such allegation in the FAC. Not only is this allegation false, Singh, Kimball and KTS make another misrepresentation of events alleged prior to July 5th:

> "Creason alleges her supervisors told her that she should have proceeded to trial "so the client would look good to the Novato Police Department and City Council." [] **<u>Instead, Creason negotiated</u>**…" [Answering Brief, P. 5; FAC ¶¶s 38, 56, E9, FER36-37, emphasis added]

Singh, Kimball and KTS take Creason's allegation about Kimball's remark during her termination five weeks later on August 15th, and misrepresent it in their "Factual History" as if Kimball's remark occurred prior to the July 5th settlement conference. [*Id.*, E88:8-17] When Creason learned at the settlement hearing on July 5th that Victim had a valid domestic violence defense, <u>she refused to discriminate</u>, and there were no orders pending from Kimball and Singh that Creason <u>should discriminate</u> (FAC ¶40). Not only did Creason refuse to discriminate in housing and evict a domestic housing survivor, Tamara refused to discriminate and approved settlement (E78).

2

## C.    Singh, Kimball and KTS Misrepresented That Creason Disobeyed Her Superiors.

Singh, Kimball and KTS intentionally inserted Kimball's August 15th remark (that Creason should have tried the case) five weeks earlier in their "Factual History," before the settlement hearing occurred.  Appellees' argument that <u>Creason alleged</u> Kimball and Singh gave an order she disobeyed is false. [Answering Brief, P. 5]  (FAC ¶¶s 36, 54, 56, E84: 4-8 and fn5, 88: 8-14, 100-102, FER37: 6-9).  Creason could not obey an order given to her by Kimball on August 15th when the settlement conference was held July 5th.

When Creason discovered at the settlement hearing that Tamara's testimony affirmed Victim's domestic violence defense, <u>then</u> Creason declined to proceed in a discriminatory fashion (FAC ¶¶s 39-41).  Kimball and Singh were not present at the settlement conference (FAC ¶38).  Creason performed her job and settled the case to avoid discrimination in housing (FAC ¶¶s 39-41, E79).  Singh, Kimball and KTS make another false allegation:

> "If, as Creason has alleged, she settled her client's case and refused her supervisor's instruction to go to trial in order to aid her client's adversary, then…Creason has manifestly failed to perform her duties to her client." [Answer Brief, Page 16, E76]

Appellees have prevaricated tiers of allegations that never existed.  Creason never alleged she disobeyed a supervisor's order.

3

**D.     Appellees Second Major False Representation of the FAC Is That The Client Wanted a Trial So Creason Violated Her Ethical and Professional Duties.**

The parallel false allegation is that <u>the FAC alleges Creason violated her professional and ethical duties</u> (FAC ¶ 41, E23a:4-5, 30, 78, 100-102, FER30:13-18; 37:10-14).  The FAC alleged the opposite: Creason negotiated a Stipulation protecting her client, firm and herself from violating the FHA by preserving Victim's housing (FAC ¶¶s 41-42, E7).  The Stipulation is irrefutable evidence that Creason aided Victim, another person, exercising her protected housing rights (*Id.*).  The FAC alleges Creason's client Tamara had full settlement authority and approved the Stipulation (*Id.*).

In an attempt to discredit the Stipulation, Singh, Kimball and KTS begin referring to another corporate employee as the same "client" Creason refers to in her FAC (the shell game). (FAC ¶38).  Singh, Kimball and KTS refer to this other employee who is never referenced in the FAC to argue *Creason alleged* that she acted without her client's approval and against her client's wishes.  [Answer Brief P. 2, 12-14, 16-17, E23a:1-6, FER37:10-13; 39:3-8].  Tamara was the only authorized agent of the client present July 5, 2012.   Tamara approved the settlement Creason negotiated and the Stipulation and Minute Order prove it.

**E.     Appellees Malign Their Own Master Stipulation and Client Tamara To Distract From the Stipulation that Evidences Creason's Protected Activity.**

4

KTS designed a master stipulation for their trial attorneys to use in court during adversarial eviction proceedings (E76-78). Creason's use of KTS' own master stipulation cannot be a breach of her ethical or professional duties (E8-9). Appellees allege Creason's use of the KTS master stipulation is unreasonable, unethical, disruptive, unlawful or illegal opposition to perceived discrimination. [Answer Brief Pgs. 13-15] KTS master stipulation Paragraph 2 allows tenants to retain their housing and Paragraph 9 provides for a dismissal with prejudice (E76). KTS' master Stipulation facilitates their landlord clients aiding tenants during the adversarial eviction process. Paragraph 12 ensures representatives from KTS' large, corporate clients have authority to bind the Plaintiff (E76-78). Tamara bound her corporate employer (the Plaintiff and KTS client). (E78).

KTS' trial calendar shows 45 times right before Creason was fired, KTS attorneys and landlord clients aided tenants by settling eviction cases using KTS' master stipulation (FER1-28). In the four month period prior to Creason's termination, KTS filed four master stipulations for the same corporate landlord client for whom Tamara worked, Fairfield or "FF" in the trial calendar (E89, FER 1, 7, 28). Two KTS master stipulations were filed for Fairfield on the day Creason was terminated (FER28). The fact that two stipulations were filed by KTS for Fairfield on Creason's termination date, using the same KTS master stipulation Creason used for Victim, supports the conclusion that there was something unique

5

about Victim's stipulation to form the basis for firing Creason (*Id.*). The FAC alleges that the unique quality is that Victim's Stipulation permitted an innocent victim of domestic violence to retain her housing.

Singh, Kimball and KTS introduce two red herrings to distract from the protected activity on the face of the Complaint. Appellees take a remark from Kimball made on August 15th, that Creason should have tried the case, which is moved back in time prior to the July 5th settlement hearing to fabricate an order Creason disobeyed. The first red herring is the fallacy that Creason had been ordered to try the case and **instead** she settled it. [Answer Brief P.5] This red herring misleads the Court that Creason was disobedient, unreasonable, disruptive and unlawful (FAC ¶¶s 52, 54, 56). The face of the FAC provides no basis for these false allegations because, as the FAC alleges, the Stipulation was entered into five weeks before Creason was told she was being fired for not proceeding to trial (FAC ¶¶s 41-54, 56).

The second red herring Singh, Kimball and KTS present is the fallacy that the client's authorized agent Tamara wanted to proceed to trial. [Answer Brief Pgs. 11-16] Instead the opposite was true, as stated in the FAC (FAC ¶41). Tamara approved and authorized the Stipulation during the settlement conference (E78-79). Appellees' contentions about what Tamara wanted on July 5th are false, misrepresent her intent, and are unsupported by the face of the FAC (FAC ¶41).

II. **CREASON DOES NOT HAVE TO PROVE HER PRIMA FACIE CASE OR VICTIM'S DISCRIMINATION THEORY TO ESTABLISH HER CASE FOR RETALIATION PURSUANT TO § 3617.**

    A. **Section 3617 of the FHA Requires Creason to Allege Any Other Person was Exercising a Right Protected by the FHA, Not Prosecute the Underlying Right.**

To survive a motion to strike under Federal Rule of Civil Procedure 12(b)(6), Creason does not have to prove Victim's fair housing violation or the theory of discrimination in order to allege Creason was retaliated against in violation of § 3617 of the FHA. [Answer Brief Pgs. 20-21] Creason only has to allege she aided Victim in her exercise of a protected housing right, and Creason was terminated in retaliation for that aid (42 U.S.C. § 3617; FAC ¶¶s 11-22, 40-42, 52, 54-56). Victim did not have to prove a theory of sex discrimination either. [Cal. Code of Civ. Proc. §1161.3] Creason alleged sufficient facts to support her § 3617 retaliation claim under the *Twombly* standard (E26-27). [*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)]

    B. **Victim Was a Tenant in Occupation and Due Process Required Her Name to Appear on the Unlawful Detainer Complaint.**

The fact that KTS' unlawful detainer complaint only named Perpetrator is no accolade. [Answer Brief Pgs. 1, 4, 21] There is a difference between <u>tenants</u> and <u>occupants</u>. Tenants are parties to a lease and entitled to due process notice

7

when their leasehold interest is being terminated.  The tenants of the premises in actual occupation when the complaint is filed need be made parties defendant in the proceeding.  [Cal. Code Civ. Proc. § 1164]  An invisible way to evict a female domestic violence victim tenant is to omit her name on the complaint (Answer Brief P. 21, E89).  Then one does not run afoul of Lynn Dover's warning about discriminatory policies of <u>automatically</u> evicting domestic violence victims along with perpetrators (E64).   After filing an eviction against the perpetrator, to get domestic violence victims out, all you have to do is file a Prejudgment Claim <u>evicting all unknown occupants in possession</u>.  An eviction filing is accomplished without ever naming the female victims (E90 (¶6(3)(c), 71).

Ideally, the victim would not respond to the prejudgment claim and just move; if she did respond to the Prejudgment Claim and filed an Answer, the law requires her name be added to the case (E71, ¶9, 75, Cal. Code Civ. Proc. §1174.25(b)).

It is not a perfect scheme.  The Complaint verified by KTS, Paragraph 6(c)(3), states other defendants are "unknown" (E90, 92).   However, the lease attached to the Complaint and Appellees' Brief shows the other defendants are well known (E93; Answer Brief P.4).  Finally, failing to name <u>tenants</u> in actual occupancy on the Complaint creates due process violations.   There is a landmark case about due process notice to occupants as old as the firm of Kimball, Tirey &

8

St. John, LLP.  [*Arrieta v. Mahon*, 31 Cal.3d 381(1982)]  The California Supreme Court held that failing to give occupants notice of eviction is manifestly contrary to the strictures of the Fourteenth Amendment of the United States Constitution and Article I, Section 7 of the California Constitution.  [*Id.* at 389]

Any occupants that are unnamed in the eviction (and hence unnamed in the writ of possession) cannot be evicted by the marshal.  [*Id.*]  The Prejudgment Claim KTS filed to evict victim (E71) is known as an *Arrieta* claim and is only used for unknown occupants to provide them with due process notice for a hearing. Tenants have more protection than occupants.  [Cal. Code Civ. Proc. §1164]   A Prejudgment Claim cannot be used to evade providing known tenants with due process notice by naming them on the complaint, then sweeping them out using a Prejudgment Claim (E71, 89, 93).  [Cal. Code Civ. Proc. §1164]

Singh, Kimball and KTS claim *Creason alleged* Appellees were not motivated by gender in pursuing Victim's eviction. [Answer Brief P. 21]  This assertion is false.  The FAC does not speculate, surmise, or try to guess what Appellees' motivation was.  Creason was told she was terminated for settling Victim's eviction instead of trying the case (FAC ¶¶s 54, 56).  The reason Kimball gave Creason for taking the eviction through trial – to impress the Novato Police and City Council – has nothing to do with motivation   (FAC ¶103, E40).  Stated reasons for termination may be actual reasons or mere pretext.  Motivation lies in

9

the deepest recesses of the mind.   Long-held prejudices, hidden ulterior motives, and unspoken desires all contribute to motivation.

### C.     Rule 12(b)(6) Does Not Require Creason to State a Prima Facie Case for Retaliation..

Singh, Kimball and KTS argued that Creason had to state a prima facie case for retaliation under the summary judgment standard for § 3617 claims in order to defend a Motion to Strike (FER 38, 40). [Answer Brief P. 11]  Creason argued to the district court that the *McDonnell Douglas* burden-shifting test is an evidentiary standard and not a pleading requirement and cited *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  (FER33).   All that is relevant on a motion to dismiss in a discrimination case is whether plaintiffs have provided adequate notice of the claim under Rule 8(a) of the Federal Rules of Civil Procedure with some factual allegations to satisfy the plausibility standard in *Twombly* and *Iqbal.*   [*Reyes v. Fairfield Properties*, 661 F.Supp.2d 249, 266 (2nd Cir. 2009)]  The FAC meets the pleading requirements cited in *Reyes.*

### III.     PURSUING A DISCRIMINATORY EVICTION IS UNLAWFUL, AKIN TO MALICIOUS PROSECUTION, AND EXPOSES A LANDLORD TO A FAIR HOUSING VIOLATION.

### A.     An Eviction that Discriminates in Violation of 42 U.S.C. § 3604(b) is a Discriminatory Housing Practice Akin to Malicious Prosecution.

A <u>discriminatory housing practice</u> is defined as any act that is unlawful under current FHA sections 3604, 3605, 3606, or 3617.  [24 C.F.R. § 100.20]  An eviction that discriminates in housing based on sex is a violation of § 3604(b) and is therefore a discriminatory housing practice.  [42 U.S.C. § 3604(b), 24 C.F.R. § 100.60(b)(5)]  Singh, Kimball and KTS have not cited a case where an attorney's prosecution of a discriminatory and unlawful eviction would be protected by attorney client privilege as a communicative act.  [Answer Brief P. 17]  Pursuing an unlawful eviction is akin to malicious prosecution and should not be shielded by the litigation privilege in the name of zealous advocacy.  [Answer Brief Pgs. 18-19]  Continued prosecution in a case like Victim's would not only be unjust, but against public policy.

### B.  The Continued Prosecution of a Discriminatory Eviction Would Have Exposed KTS' Client to a Potential Fair Housing Charge.

October 30, 2014, HUD charged the owner of the Southgate Apartment Company, LLP, A&G Management Company, Inc., Property Manager Kenya McKenzie-Hutchinson, and Regional Property Manager Linda Burlew with housing discrimination based on sex under 42 U.S.C. §§s 3604(a) and (b). (RAHUD1).  The Southgate case was based on a domestic violence incident where a female tenant's non-resident boyfriend severely stabbed the tenant and her 18

11

year old son, and then a firearm was discharged. The victim was hospitalized following the stabbing (RA HUD3).

When the victim got out of the hospital and returned to the property, Burlew ordered Hutchinson to serve the victim with a 30 day notice of termination of tenancy based on the domestic violence incident (RAHUD4). When 30 days elapsed and the victim had not moved, Hutchinson sent the victim a letter informing her that management would be sending her file to their lawyer (RAHUD5). Maryland Legal Aid warned the landlord's counsel that Maryland and federal domestic violence laws provide housing protections for victims of domestic violence (*Id.*). Legal Aid wrote that the victim did not intend to move from her unit, urging the landlord to reconsider its decision to terminate the victim's lease (*Id.*).

In response, Hutchinson sent the victim a letter declining to renew her lease (RAHUD6). The victim was a Section 8 voucher holder and filed the requisite Tenant Notice of Intent to Move form with the housing authority. Apparently the tenant did not move (dates are redacted). HUD's charging document then states the landlord filed an eviction against the victim based on her Notice to Vacate and the domestic violence (RAHUD6-7). The victim filed a complaint with HUD, after which the landlord's counsel withdrew the eviction and dismissed it

12

(RAHUD7). The HUD investigation continued and uncovered sex discrimination based on unequal treatment (*Id.*).

When KTS filed the Prejudgment Claim to evict Victim as an unknown occupant, they targeted Victim just as if they had named her, without the due process afforded to a tenant. The KTS corporate client was exposed to a fair housing claim because of the eviction proceeding against Victim.

Appellees fail to cite authority that evicting a domestic violence survivor with a valid defense is okay if more men than women are evicted. [Answer Brief P. 21] Numbers do not establish a facially neutral policy if women are being evicted for the domestic violence against them (E58-59). The victim in the Southgate case had two sons, which did not stop HUD from charging the apartment owner and management company with discrimination (RAHUD8).

## IV. CREASON IS NOT REQUIRED TO NOTICE A MOTION FOR SUMMARY JUDGMENT UNDER RULE 12(d).

### A. Federal Rule of Civil Procedure 12(d) Does Not Require Creason to Notice a Motion for Summary Judgment in Opposition to Singh, Kimball and KTS' Rule (12)(b)(6) Motion.

Creason's request for entry of summary judgment is not moot. [Answer Brief P.22; FER 35] Rule 12(d) does not require Creason to notice a motion for summary judgment in opposition to Singh, Kimball and KTS' Motion to Dismiss

13

Creason's FAC. [Fed. R. Civ. P. 12(d)]   As a result of Singh, Kimball and KTS presenting matters outside the pleadings, which were not excluded by the court, the motion must be treated as one for summary judgment (Fed. R. Civ. P. 12(d), E15:26-28, 16:1-12).   Creason requested summary adjudication as to all the extrinsic matters Appellees raised in their Motion to Dismiss the FAC, and Rule 12(d) allows summary judgment (FER 35).   Rule 12(d) does not require Creason to argue a summary judgment motion when defending a Rule 12(b)(6) motion.

## V.      CREASON HAS NOT WAIVED HER STATE LAW CLAIMS.

### A.      Creason Appealed the Judgment Dismissing her FAC.

Creason appealed both the order dismissing her FHA claim and the judgment dismissing her FAC (E1-2).   Creason requested that the judgment dismissing her FAC be reversed and her FAC be allowed – including the two derivative state law claims.  [Brief Pgs. 14, 17, 26]  Appellees argued "the application of *federal law* – the interpretation of the anti-retaliation provision of the FHA – is dispositive of Creason's two state law claims as well as her FHA claim…" (FER31-32).   The parties agree resolution of whether Creason can state a retaliation claim under § 3617 is determinative of all three claims (Brief P. 26).

14

## CONCLUSION

Creason requests the Order dismissing Creason's FHA claim should be reversed and the requested amendments permitted. The case should be remanded back to the district court for entry of summary judgment as to all three causes of action in the FAC. In the alternative, Creason request that the case be remanded with a direction that summary adjudication be entered that Creason has established a prima facie case of retaliation under § 3617 of the Fair Housing Act.

Respectfully submitted,
/s/ Jane L. Creason
*In Propia Persona*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 4,192 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App.

P.32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using Microsoft

Word 2007 in 14-point Times New Roman.

/s/ Jane L. Creason
*In Propia Persona*

Dated: November 12, 2014

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on November 12, 2014, the foregoing

Opening Brief for Appellant Jane Creason with Addendum was served by the

Ninth Circuit's Appellate ECF system; and accompanying volume of the Further

Excerpts of Record was served by U.S. mail.

/s/ Jane L. Creason

Defendant/Appellee:
Puneet Kaur Singh
Fred M. Plevin
fplevin@paulplevin.com
Paul, Plevin, Sullivan & Connaughton LLP
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: (619) 237-5200; Facsimile: (619) 615-0700

Defendant/Appellee:
Theodore Kimball
Fred M. Plevin
fplevin@paulplevin.com
Paul, Plevin, Sullivan & Connaughton LLP
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: (619) 237-5200; Facsimile: (619) 615-0700

Defendant/Appellee:
Kimball, Tirey & St. John LLP
Counsel for Defendant and Appellee Kimball, Tirey & St. John LLP
Fred M. Plevin
fplevin@paulplevin.com
Paul, Plevin, Sullivan & Connaughton LLP
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: (619) 237-5200; Facsimile: (619) 615-0700